# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

### WILLIAMS' ADMINISTRATOR v. NORTON COAL CO.

September 10, 1908.

Absent, Keith, P.

1. MASTER AND SERVANT—*Defective Machinery—Proximate Cause.*—A plaintiff cannot recover for an injury inflicted by defective machinery unless it affirmatively appears that the defect was the proximate cause of the accident of which he complains.

2. MASTER AND SERVANT—*Injury to Servant—Contributory Negligence of Servant—"Back-Poling" in a Mine—Proximate Cause.*—The evidence in this cause shows that "back-poling" an electric car into a mine was an extremely dangerous operation; that its danger was open and obvious, and well-known to the employees in the mine, including the plaintiff's intestate, and was forbidden by the defendant's rules, and that the sole proximate cause of the accident which resulted in the death of the plaintiff's intestate was the useless and reckless manner in which he "back-poled" a car into the mine, with knowledge of the danger, and hence there can be no recovery by his personal representative.

Error to a judgment of the Circuit Court of Wise county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Vicars & Peery,* for the plaintiff in error.

*Bullitt & Kelly* and *Ayers & Fulton,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by the administrator of Joseph Williams, deceased, to recover of the Norton Coal Company damages for having, as alleged, negligently caused the death of the plaintiff's intestate.

At the time of the accident, the deceased was employed by the defendant company as motorman, operating electric cars which were used in its mines at Norton for hauling coal.

A demurrer to the evidence, filed by the defendant company, was sustained, and thereupon this writ of error was awarded.

The deceased was hauling cars of coal from the Fifth Right Entry of the mine to B Entry, the latter being the main entry leading to the mouth of the mine. The operation consisted in hauling three or four cars at a time from the minor entry out to and upon the main entry, and when a sufficient number had been thus placed, to haul the whole number over the main entry out of the mine. The deceased had taken three or four cars out of the Fifth Right Entry and placed them on B Entry. He then cut loose from these cars, pulled up beyond the junction point of the two entries, and undertook to back into the Fifth Right Entry to get more cars. This operation of backing put the pole, which carried the electricity from the wire to the wheels of the motor, in front. While the motor was being thus moved backwards with the pole in front, the wheel came off of the wire on B Entry, and ran up over one of the cross timbers supporting the roof of the mine. This knocked the cross timber down, derailed the motor, and caused it to strike and knock down several other props, together with considerable slate which they supported, which fell upon the motor and killed Williams.

It was contended in the circuit court that the timbers supporting the roof of the mine at the point of the accident were rotten, which caused them to fall when struck by the pole, and that this condition was due to the negligence of the defendant.

The record does not sustain this charge of negligence on the part of the defendant company. The evidence fails to show that the timbers were rotten, while there is affirmative evidence establishing the contrary.

It is further contended that the company was guilty of negligence, in that the motor pole was unsafe and defective, and that this was the cause of the accident. The defects complained of in the motor pole were, first, that the spring was too weak to keep the pole up against the wire; and, second, that the wheel on the pole which ran along the wire was so worn that it would not stay on the wire.

There was evidence tending to show that the spring mentioned was weak, and that the wheel was somewhat worn; but the evidence fails to show that these alleged defects in any manner contributed to the accident. On the contrary, it is manifest from the record that the defective condition of the pole was not the proximate cause of the death of the plaintiff's intestate.

It is unnecessary to cite authorities to sustain the proposition that a plaintiff cannot recover on account of defective machinery, unless it affirmatively appears that the defect was the proximate cause of the accident of which he complains. The evidence satisfactorily shows that the accident in which the deceased lost his life resulted from the unusual and reckless manner in which he was "back-poling" the motor into the Fifth Right Entry. The proper and usual method was to turn the pole, so that it would trail behind when entering the Fifth Right Entry. If this had been done, the accident could not have happened, because in that case if the wheel had come off the wire and the pole had reached the roof at all, it would have merely dragged lightly over the timbers without probable or even possible harm to anyone; whereas, backing the motor in, with the pole pointing in the direction the motor was going, was almost certain to throw the wheel off of the wire, making the accident which resulted well-nigh inevitable.

The evidence shows that the established and well-known rule of the company was against "back-poling." It is, however,

contended that notwithstanding this general rule "back-poling" was done with the knowledge of the company.

The evidence does not satisfactorily show that the company knew that its employees were violating this rule. Very recently, before this accident happened, the general manager of the company reiterated the strictest orders against "back-poling" at any point in the mines. The extent to which the rule is shown to have been violated was in cases where the motor was only to be backed very slowly from three to five feet and then stopped; whereas, in this case it appears that the deceased was moving the motor backward with considerable speed, and with the purpose of running the whole distance (some 300 feet) into the Fifth Right Entry without stopping.

If, however, there had been no rule of the company on this subject, the plaintiff could not recover, because the evidence shows that "back-poling" in the mines is an extremely dangerous operation; that its danger was open and obvious, and well know to the employees; and that any man of common sense would know, and in this case was bound to know, that it was perilous to "back-pole" in the way deceased was doing when the accident occurred. There was no occasion for the deceased to incur the open and obvious danger which resulted in his death. The usual and proper method involved the small trouble of turning the pole so that it would trail behind the motor, thus avoiding all risk to himself and all danger of injury to his employers' property.

It satisfactorily appears that the useless and reckless method of entering the Fifth Right Entry of the mine adopted by the plaintiff's intestate was the sole proximate cause of the accident which resulted in his death, and, therefore, upon well-settled principles, his administrator cannot recover.

There was no error in the judgment complained of, sustaining the demurrer to the evidence, and it must be affirmed.

*Affirmed.*